IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JACQUELINE YOUNG WALLS,** ) ) ) | |
| Plaintiff, ) ) | |
| ) | Civil Action Number |
| **vs.** ) | **2:11-cv-340-AKK** |
| ) | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** ) ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Jacqueline Young Walls ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I. Procedural History

Plaintiff filed her application for Title II disability insurance benefits on

March 15, 2007, (R. 45), alleging a disability onset date of March 30, 2006, from "diabetes, neuropathy in right foot, arthritis in legs/knees, high cholesterol, [high blood pressure], anxiety, depression." (R. 87). Plaintiff's disability report alleged also that she is unable to work because she has "arthritis pain and the diabetes is controlling things because it does not allow my foot to heal. I get anxious and depressed and feel helpless because I cannot do the things that I want or was used to doing." (R. 87). After the denial of her application on June 22, 2007, (R. 46), Plaintiff requested a hearing in an undated letter, (R. 52), and received one on July 23, 2009, (R. 21). At the time of the hearing, Plaintiff was 52 years old with a high school diploma. (R. 24). Her past relevant work included light and skilled work as a bookkeeper, and sedentary and skilled work as a collection clerk and service representative. (R. 38). Plaintiff has not engaged in substantial gainful activity since March 30, 2006. (R. 87).

The ALJ denied Plaintiff's claims on October 16, 2009, (R. 8), which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 30, 2010, (R. 1). Plaintiff then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Plaintiff is correct that the ALJ committed reversible error. In that regard, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and therefore met Step One. (R. 13). Next, the ALJ acknowledged that Plaintiff's severe impairments of "history of fracture of right left ankle with repair surgery, obesity, insulin dependent diabetes mellitus, and chronic obstructive pulmonary disease " met Step Two. *Id*. Having determined that Plaintiff met Step Two, the ALJ proceeded to the next step and found that Plaintiff did not satisfy Step Three since her impairments or combination of impairments neither met nor equaled the requirements for any listed impairment. (R. 17). Although the ALJ answered Step

Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Plaintiff "has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a)." *Id*. Further, the ALJ held Plaintiff

> is capable of performing past relevant work as a bookkeeper. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity. . . . [T]he job of bookkeeper is classified as skilled sedentary work which requires lifting 10 pounds occasionally, standing or walking 2 hours in [an] 8-hour workday, [and] sitting 6 hours in and 8-hour workday. Based upon [Plaintiff's] residual functional capacity, she can return to any of her past relevant work.

(R. 19, 20). Because the ALJ answered Step Four in the negative, the ALJ determined that Plaintiff is not disabled. (R. 20); *see also McDaniel*, 800 F.2d at 1030.

## V. Analysis

The court turns now to Plaintiff's contentions. Specifically, Plaintiff contends that the ALJ committed reversible error because she (1) erred in finding that Plaintiff can return to her past relevant work as a bookkeeper, as Plaintiff performed that job, doc. 9 at 5-8, (2) failed to properly assess Plaintiff's residual functional capacity ("RFC") by failing to obtain a medical source opinion from a physician and failed to consider Plaintiff's limitations due to chronic obstructive

pulmonary disease ("COPD"), obesity, and her mental impairments, *id*. at 8-13, and (3) failed to consider the Medical Vocational rules at the sedentary level, *id*. at 13-14. Based on its review of the record, the court disagrees with Plaintiff that the ALJ committed reversible error.

A. *The ALJ's finding that Plaintiff can perform her past relevant work as a bookkeeper is supported by substantial evidence.*

Plaintiff first contends that the ALJ "erred in finding that Plaintiff can return to her past work as performed." Doc. 9 at 5. As relevant background, Plaintiff last worked for BellSouth as an independent company assistant where she "kept books and records between BellSouth and independent companies." (R. 25). Plaintiff described that position as primarily a sedentary job, although she was on her feet "probably two to three hours" per day, and occasionally lifted boxes weighing "maybe 20 or 30 pounds." *Id*. The vocational expert ("VE") described Plaintiff's work as "sedentary. But as she performed it, it would be light because of the amount of weight she testified she had to lift." (R. 37-38). The ALJ held that "[i]n comparing [Plaintiff's] RFC with the physical and mental demands of [bookkeeper] work, the undersigned finds that [Plaintiff] is able to perform it <u>as actually and generally performed</u>. According to the *Dictionary of Occupational Titles*, the job of bookkeeper is classified as skilled sedentary work which requires

lifting 10 pounds occasionally, standing or walking 2 hours in 8-hour workday, sitting 6 hours in an 8-hour workday." (R. 20) (emphasis added).

Tellingly, Plaintiff asserts only that she cannot perform the duties of bookkeeper as she previously performed it, i.e., as light work. This contention fails for two reasons. First, the law is clear that a claimant is not disabled if she is able to perform her past relevant work "either as the claimant actually performed it or as generally performed in the national economy." *See* 20 C.F.R. §§ 404.1560(b) (emphasis added). Here, Plaintiff does not dispute that she can perform the job as it is "generally performed in the national economy," i.e., as sedentary work. Second, as discussed below, the ALJ's determination that Plaintiff has the RFC to perform "the full range of sedentary work," (R. 17), is supported by substantial evidence. Therefore, this court need not decide whether Plaintiff can perform the job of bookkeeper as Plaintiff previously performed it because the regulations do not require the ALJ to reach that determination if, as here, the ALJ finds that Plaintiff can perform the job as generally performed in the national economy. Consequently, Plaintiff failed to meet her burden of showing that she is disabled where, as here, she contends only that the ALJ erred by failing to find that Plaintiff cannot perform the job of bookkeeper as Plaintiff "actually performed it."

B.  *The ALJ's finding that Plaintiff has the RFC to perform sedentary work is supported by substantial evidence.*

Next, Plaintiff contends that "substantial evidence does not support the ALJ's RFC for the full range of sedentary work without any additional limitations or refinements," and that the ALJ erred when she failed to obtain a medical source opinion ("MSO"), and consider Plaintiff's COPD, obesity, and mental impairment. Doc. 9 at 8-13. For the reason stated below, this argument is unpersuasive.

Although Plaintiff concedes that a MSO is not required, she contends that "an MSO of some kind is crucial to the analysis of functioning based on the medically determinable impairments determined." Doc. 9 at 10. In other words, Plaintiff argues that the ALJ erred in failing to obtain a MSO because the record evidence is insufficient to make a RFC determination. However, Plaintiff overlooks that the substantial medical record provided sufficient objective medical evidence for the ALJ to determine Plaintiff's RFC. For example, a review of the medical record indicates that from 2006 through 2008, Dr. Ricky Fennell ("Dr. Fennell"), Plaintiff's primary treating physician, began treating Plaintiff on March 16, 2006, and diagnosed her with "right ankle fracture with subsequent surgical repair now complicated by chronic ulcer and arthritis, history of diabetes mellitus type II, hyperlipidemia, hypertension, and obesity." (R. 202). Dr. Fennell

prescribed Lortab for pain and advised Plaintiff to "get the fluid down in her leg as this will impede healing of the chronic ulcer." (R. 203). During this visit, Plaintiff reported also taking the antidepressant, Effexor. (R. 202).

Three months later, on June 23, 2006, Dr. Fennell treated Plaintiff for "upper respiratory tract symptoms," noted that she "continues to smoke," "needs to continue to try to loose [sic] weight," and referred her to Dr. Graciela Alarcon ("Dr. Alarcon") for her chronic right ankle pain. (R. 141, 144, 146). On August 28, 2006, Dr. Alarcon evaluated Plaintiff's "chronic right ankle pain, status post right ankle fracture" and remarked that her "right ankle joint is swollen and tender to motion" and that her radiographs revealed a "significant degree of degenerative joint disease in the right ankle joint." (R. 147, 148). A week later, on September 8, 2006, Plaintiff returned to Dr. Fennell complaining of "right foot discomfort" and "difficulty sleeping at night." (R. 149). Dr. Fennell prescribed Plaintiff Ambien, ordered laboratory work, and noted the he would "make additional recommendations after review of labs." *Id*.

The next medical visit occurred eight months later, on May 14, 2007, when Plaintiff saw Dr. Fennell because her "diabetes was completely out of control." (R. 324). Dr. Fennell noted that Plaintiff had gained 16 pounds and that her "main focus has been that of her chronic pain syndrome. I have told her that while her

ankle pain may be a nuisance, it is not going to kill her. If she does not get her diabetes under control, this could potentially end her life prematurely or cause her to suffer a heart attack or stroke as well as kidney failure or amputations. It is imperative that she try to lose weight." *Id*.

The next month, on June 12, 2007, Plaintiff saw Dr. Fennell and he noted that the "diabetic educator was extremely worried about [Plaintiff] and states that she is at high risk for having complications from diabetes if she does not turn things around," and that "smoking cessation will be greatly beneficial." (R. 322). Plaintiff saw Dr. Fennell four months later, on October 10, 2007, and reported that she was admitted to St. Vincent's East after developing a cough and dyspnea. (R. 320). Dr. Fennell noted that Plaintiff "has smoked a few cigarettes lately" and that "since her hospitalization and removal of fluid, she has felt much better." *Id*. Plaintiff returned to Dr. Fennell on November 26, 2007, and reported that her "diabetes is much better." (R. 318). Dr. Fennell noted that Plaintiff had lost 10 pounds and that he would "recheck her labs today." *Id*.

Plaintiff next visited Dr. Fennell five months later, on April 21, 2008, after spending time in the hospital for COPD. (R. 316). Dr. Fennell noted Plaintiff's non-compliance with her insulin and that she

> does not appear motivated to take care of herself. I have been trying

> to help her out for the last two years and we have gotten no where. Perhaps she will do better under the care of another physician. . . . I don't know that this patient and I will ever be able to reach common ground and therefore it is probably best that she get under the care of another physician. I will send her a dismissal letter.

(R. 316). Dr. Fennell sent Plaintiff a dismissal letter on April 28, 2008, and canceled her July 21, 2008, appointment. (R. 315).

On May 12, 2007, Dr. Ravenndran Meleth ("Dr. Meleth") completed a disability evaluation on Plaintiff's "ankle and right foot pain" as a result of a "right ankle fracture with subsequent surgical repair, not complicated by chronic ulcer and arthritis." (R. 212). Plaintiff reported that her ankle "hurts all the time," that the pain is a 10/10 in the morning, and a 7/10 once she takes her pain medication, *id*., that she can stand maybe 30 minutes to one hour at a time and walk for 20 minutes, "drive a little," (R. 213). Dr. Meleth noted that Plaintiff (1) has diabetes, although she "has not been checking her blood sugar lately," (R. 212), (2) does her daily chores and her husband helps with the cooking and cleaning, *id*., (3) is depressed, although "Effexor seems to help," (R. 213), (4) smokes a half-pack of cigarettes per day, *id*., and (5) that her right ankle has "mild swelling and deformity," (R. 214). Dr. Meleth's impression was that Plaintiff (1) has decreased range of motion, stiffness, and pain in her right ankle caused by "moderate osteoarthitis," (R. 215), (2) diabetes mellitus that is "fairly controlled"

although Plaintiff has not been checking her sugar, *id.*, (3) is "moderately overweight," (R. 216), and (4) has mild depression, *id.* The ALJ gave Dr. Meleth's opinion "greater evidentiary weight than that of a medical consultant who has never seen [Plaintiff]," and found that it "appears to strongly support a sedentary work capacity. (R. 19).[1]

From September 2007 through May 2008, Plaintiff had three emergency room visits due to shortness of breath. The first occurred on September 24, 2007, when St. Vincent's East evaluated and admitted Plaintiff. (R. 289). Plaintiff was diagnosed and treated for COPD exacerbation, hypertension, diabetes, and hyperlipidemia, and "depression. Hold Effexor secondary to hypertension," (R. 289, 293), and discharged with instructions to follow up with her primary care physician, stop smoking, and follow the 1800 calorie American Diabetic Association diet, (R. 289).

The second visit occurred three months later, on December 15, 2007, when St. Vincent's East again admitted Plaintiff due to COPD exacerbation. (R. 258). Plaintiff admitted that she "started back smoking and it contributed to this present

---

[1] The record also contains three State agency medical source opinions that the ALJ assigned "minimal evidentiary weight" because they were non-examining sources that were not supported by substantial evidence and were inconsistent with the record as a whole. (R. 19, 217, 224, 238).

exacerbation." (R. 260). The medical chart noted that Plaintiff's past medical history included diabetes, COPD, hypercholesteolemia, hypertension, and depression. *Id*. After administration of intravenous and oral steroids, St. Vincent's East discharged Plaintiff on December 21, 2007, with instructions to follow up with her primary care physician. (R. 258). Plaintiff's discharge medications included Effexor. *Id*.

Finally, on May 23, 2008, Plaintiff visited St. Vincent's East emergency department again for "difficulty breathing" and sharp chest pains. (R. 250). The emergency department treatment notes stated that Plaintiff smokes a half pack of cigarettes per day, and that they gave Plaintiff two breathing treatments and discharged her that same day. (R. 251).

Based on this record, substantial evidence supports the ALJ's finding that Plaintiff can perform sedentary work. Contrary to Plaintiff's contention, the ALJ considered Plaintiff's COPD and found that "she continues to smoke cigarettes" and admitted that it exacerbates her COPD. (R. 18). This finding is supported by substantial evidence because Dr. Fennell and the emergency room physicians urged Plaintiff to stop smoking each time they saw or treated her. Further, Plaintiff's contention that her COPD warrants environmental restrictions on temperature, fumes, and odors overlooks that tobacco is an environmental irritant

that causes fumes and odors. The ALJ had no reasonable basis to restrict Plaintiff's exposure to environmental toxins given Plaintiff's continued tobacco abuse despite the direct and negative impact on her health.

Likewise, the ALJ did not err in failing to find Plaintiff disabled due to her obesity. There is no evidence in the record that Plaintiff's obesity prevents her from performing sedentary work. In fact, the evidence indicates otherwise since Plaintiff worked at BellSouth despite her obesity. (R. 202). Moreover, Plaintiff reported that she "drives a little," shops, cooks, does housework, and helps her husband manage the finances, i.e., she can function despite her obesity. Furthermore, despite repeated admonitions to lose weight, Plaintiff chose to be non-compliant even though her obesity worsened her chronic conditions. *See* 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind."); *see also Dawkins v. Bowen*, 848 F.2d 1211,1213 (11th Cir. 2003). Therefore, the ALJ did not err in failing to consider her obesity a severe condition.

The ALJ also did not err in failing to find Plaintiff's mental impairment severe. In addition to her depression diagnosis and treatment with Effexor, the other record evidence establishes that on May 18, 2007, John Neville, Ph.D. ("Dr. Neville") evaluated and diagnosed Plaintiff with adjustment disorder with mixed

anxiety and depressed mood, and "rule[d] out borderline intellectual functioning." (R. 220). Dr. Neville recommended psychotherapy and noted that Plaintiff's "psychological prognosis is considered fair to good over the next six to twelve months," that "her ability to cope with ordinary work pressure is considered mildly impaired," and that she "is willing to accept supervision." *Id*.

During 2009, Dr. David Myers ("Dr. Myers") also evaluated Plaintiff's mental functioning. (R. 368). Although the date Dr. Myers first evaluated Plaintiff is illegible, he noted that Plaintiff suffered from depression and anxiety. *Id*. Dr. Myers next evaluated Plaintiff on September 8, 2009, and noted that she was "working toward balance of cognition and emotion." *Id*. The next week, on September 16, 2009, Dr. Myers noted that Plaintiff's progress was positive, "less depressed, anxiety." *Id*. Lastly, on December 15, 2009, Dr. Myers again noted "less depressed, anxiety," and "progress positive." *Id*. For each evaluation, Dr. Myers also observed that Plaintiff was "fully oriented in all spheres" and had "no suicidal ideation." *Id*.

This record does not reveal a mental impairment disability. First, Plaintiff's depression is apparently well controlled with Effexor because the record does not demonstrate that she complained of a depressed mood to Dr. Fennell, or to physicians at St. Vincent's East, who at one time discontinued her Effexor in order

to stabilize her blood pressure, (R. 293). Moreover, examining consultant Dr. Neville recommended Plaintiff receive psychotherapy and opined that her prognosis was good. Furthermore, Dr. Myers reported that Plaintiff's condition improved with each visit and that Plaintiff denied suicidal tendencies. In other words, the record evidence overwhelming supports that Plaintiff's depression is well maintained by Effexor and that her prognosis with minimal intervention is good. Therefore, the ALJ did not err in failing to find that Plaintiff's mental impairment was severe, and substantial evidence supports the ALJ's finding that Plaintiff can perform a full range of sedentary work.

C.   *The ALJ did not err in failing to proceed to Step Five because she answered Step Four in the negative when she determined that Plaintiff could perform her past relevant work.*

Lastly, Plaintiff contends that the ALJ erred in "failing to adequately consider the claim under the Medical Vocational Rules at the sedentary level." Doc. 9 at 13. Basically, Plaintiff contends that the ALJ failed to consider her age and education to determine that she qualified "for consideration under the Medical Vocational Rules." *Id*. The law is clear that Appendix 2, Medical Vocational Guidelines, found in the Dictionary of Occupational Titles, is applied "in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past

work." 20 C.R.F. § 404.1569.  Further, if the ALJ finds that the claimant has "the [RFC] to do your past relevant work, we will determine that you can still do your past work and are not disabled.  We will <u>not</u> consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant number in the national economy." 20 C.F.R. § 404.1560(b)(3) (emphasis added).  Because the ALJ clearly determined at Step Four that Plaintiff was able to do her past relevant work of bookkeeper, and, consistent with the law, was not disabled, *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)), the ALJ had no need to proceed to Step Five.  Therefore, the ALJ committed no error by failing to proceed to Step Five to consider the Medical Vocational Guidelines.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 21st day of February, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE